UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LIONEL GUILLORY** | : | **CIVIL ACTION NO. 2:16-cv-1764** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **JEFFERSON DAVIS PARISH, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion for Partial Summary Judgment and Attorney Fees [doc. 23] filed by defendants and relating to the complaint filed by plaintiff Lionel Guillory. Guillory opposes the motion. Doc. 25. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court.

### I.
### BACKGROUND

This action arises from injuries allegedly inflicted on Guillory by Jefferson Davis Parish law enforcement officials, upon entry into his home in Welsh, Louisiana, on December 28, 2015. Doc. 1. Guillory asserts that the entry was made after his wife, Patricia, filed a domestic complaint against him with the Jefferson Davis Parish Sheriff's Office ("JDPSD"). *Id.* at 3. He also maintains that Patricia told officers that he was armed with a pistol and a rifle, legally blind, and taking antidepressants. *Id.*

Guillory states that, upon the deputies' arrival, he barricaded himself in his home. *Id.* He agreed to speak with his sister-in-law, Lyndsey Hanks, if she would come inside the house but deputies declined this request. *Id.* at 3–4. Deputies then began planning to enter his home, and

Deputy Derrick Miller approached the door. *Id.* at 4. Guillory states that he opened the door to speak peacefully with Miller, and that either Miller or Sheriff Ivy Woods then shot him in the shoulder with a bean bag round at point-blank range. *Id.* Deputies arrested Guillory and brought him to a local hospital, where he was treated for a clavicle injury. *Id.* He was then taken to the parish jail, where he began having seizures. *Id.* Instead of calling an ambulance, jail staff allegedly dragged Guillory across a concrete floor and then transported him to the hospital in a patrol unit. *Id.* Guillory was treated for his seizures and returned to jail. *Id.*

Guillory filed a complaint in this court against the JDPSO, Deputy Miller, and Sheriff Ivy Woods. He raises a claim of excessive force under 42 U.S.C. § 1983 based on his clavicle injury and a claim of negligence under Louisiana Civil Code article 2315 based on his treatment at the jail, which he alleges aggravated the injury. *Id.* at 5–8. Defendants now move for summary judgment on the excessive force claim and Guillory opposes the motion. Docs. 23, 25.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit

"significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
#### APPLICATION

Federal law provides a cause of action against any person who, under the color of law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, in order to hold the defendants liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law; that is, that the defendant was a state actor. *West v. Atkins*, 108 S.Ct. 2250, 2254–55 (1988). Defendants move for summary judgment on Guillory's § 1983 claim based on allegations that (1) Guillory cannot show a violation of his constitutional rights or, in the alternative, (2) defendants are entitled to qualified immunity.[1] Doc. 23, att. 1.

---

[1] Guillory asserts that the JDPSO is liable on a theory of municipal liability for implementing an unconstitutional policy, under *Monell v. Dep't of Soc. Svcs.*, 98 S.Ct. 2018 (1978). As an initial matter, the court notes that the JDPSO is not a juridical entity under Louisiana law and is therefore an improper party to this suit. *E.g.*, *Brister v. Robinson*, 2018 WL 473263, at *2 (W.D. La. Jan. 17, 2018). Assuming, however, that Guillory could remedy this defect by

Guillory alleges a violation of his constitutional right to be free from excessive force under the Fourth Amendment. To establish such a claim, he must show: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Such claims are necessarily fact-intensive, and the court should consider factors such as the severity of the crime at issue, whether the plaintiff posed an immediate threat to the safety of officers or other people, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citing *Graham v. Connor*, 109 S.Ct. 1865 (1989)).

The incident report shows that officers were dispatched to the scene in response to a 911 call made by Guillory's wife. Doc. 23, att. 3, pp. 3, 6. Dispatch advised the deputies that Guillory had fired his pistol at his wife and that he was still armed with a pistol and a rifle. *Id.* at 6. When they arrived at the scene, Patricia Guillory confirmed that her husband had shot at her and that he was refusing to let her inside the home. *Id.* She also stated that he was blind and taking anti-depressants. *Id.*

Officers spoke to Guillory through the door of his residence. *Id.* The officers continued to negotiate with Guillory for another two hours, with Guillory insisting he would only surrender if allowed to speak to his wife's sister in private. *Id.* The officers refused this request. *Id.* They then devised a plan to end the standoff, with Deputy Miller shooting Guillory with a twelve-gauge, non-lethal bean bag round as he opened the door and a team of officers then entering the residence. *Id.* Miller fired once at Guillory, striking him in the right shoulder. *Id.* After Guillory was detained, officers recovered several firearms from the residence. *Id.* The gun allegedly used by Guillory during the incident was in a closet. *Id.*

---

simply amending his complaint to name a proper party (such as the parish) for this claim, the court proceeds directly to the question of whether Guillory's constitutional violation claim can survive.

Guillory submits a sworn declaration in which he asserts the following:

- He did not shoot at his wife, but instead mistook her for an intruder and fired his weapon. Doc. 25, att. 1, p. 2.

- He was scared and disoriented due to the overwhelming law enforcement presence. *Id.*

- He never held a firearm or had one on his person while the officers were at his residence, and he informed the deputies that he had weapons in the home but did not have one on his person. *Id.*

- He repeatedly asked to speak to his wife during the incident but was denied. *Id.* at 3.

He also provides a declaration from his wife, Patricia Guillory, who states the following:

- Lionel Guillory fired his weapon because he believed she was an intruder. Doc. 25, att. 2, pp. 1–2.

- When the deputies arrived, she advised them of Guillory's advanced age,[2] the fact that there were firearms in the house, and that Guillory was on antidepressants. *Id.* at 2.

- She also advised the deputies that Guillory had only fired because he believed her to be an intruder. *Id.*

- On prior occasions she had called deputies to assist her and had told them then that her husband was nervous about having people at the residence whom he could not see because of his blindness. *Id.*

- She was denied the opportunity to speak to her husband during the incident, despite several requests and the fact that she did not feel threatened by him. *Id.* at 2–3.

Guillory fails to contradict, however, that the officers were told by dispatch that he had shot at his wife, that there were weapons in the home and that this fact was communicated to law enforcement, or that he refused to surrender despite over two hours of requests. *See* doc. 32.

The agreed-upon facts paint the following scene: a man refusing law enforcement entry into a house containing weapons, after law enforcement had been dispatched to the scene relating

---

[2] The record shows that Guillory was approximately 62 years old at the time of the incident. Doc. 23, att. 3, p. 10.

to his discharge of one of those weapons at a person (regardless of that person's identity), with advisements to law enforcement about his blindness, nervousness about having strangers on the property, and the fact that he was on anti-depressants. Though Guillory contends that he was scared and that his fears were heightened by the deputies' presence and demands, his subjective state of mind during the incident and reasons for refusing to obey the deputies' requests do not undermine law enforcement's apparent assessment of the danger he posed to himself and others. Given the safety concerns at issue, the length of negotiations, and Guillory's refusal to surrender, he cannot show that the deputies' use of non-lethal force through the firing of a single bean bag round was excessive. Accordingly, he cannot establish a constitutional violation and defendants are entitled to summary judgment on the civil rights claim. The court need not consider the defendants' claim of qualified immunity.

### IV.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 23] be **GRANTED**. Accordingly, the § 1983 claim is **DISMISSED WITH PREJUDICE** while the tort claim remains pending before the court.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 5th day of April, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE